
FILED
2018 Oct-15  PM 04:36
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| **MAGGIE J. ROBINSON and CODY ROBINSON,** | ) | |
| | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **CIVIL ACTION NO.: 4:18-CV-** |
| **v.** | ) | **1509-ACA** |
| | ) | |
| **LIBERTY MUTUAL INSURANCE COMPANY, et al.** | ) | |
| | ) | |
| **Defendants.** | ) | |

---

## DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT AND INCORPORATED MEMORANDUM OF LAW

---

JEFFREY M. GRANTHAM
JOSHUA B. BAKER
JOSHUA R. HESS

MAYNARD, COOPER & GALE, P.C.
1901 SIXTH AVENUE NORTH
SUITE 2400, REGIONS/HARBERT PLAZA
BIRMINGHAM, ALABAMA 35203-2618
(205) 254-1000
(205) 254-1999

*Attorneys for Defendants Liberty Mutual Insurance Company, Liberty Insurance Corporation, and Liberty Mutual Group, Inc.*

# **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................. 1

ALLEGATIONS OF COMPLAINT ..................................................................... 2

LEGAL STANDARD ........................................................................................... 4

ARGUMENT ........................................................................................................ 5

    I.     Alabama Rules of Policy Interpretation.................................................... 5

    II.    Plaintiffs' Breach of Contract Claim (Count 1) Fails Because There Is No Coverage Under The Policy.................................................................... 7

        A.    Plaintiffs' Seek Coverage For An Alleged Loss That, By Their Own Admission, Occurred Well Before Coverage With Liberty Began. .......... 8

        B.    Plaintiffs' Loss Is Excluded Under The Insect/Vermin Exclusion Of The Policy. ................................................................................................. 11

            1.    Alabama Courts Use The Ordinary Meaning Of Terms When Interpreting Insurance Policy Terms. ............................................ 11

            2.    The Ordinary Meaning Of "Insects" And "Vermin" Includes Spiders. ...................................................................................... 12

    III.    Plaintiffs' Bad Faith Claim (Count 2) Fails As A Matter Of Law...................... 15

        A.    There Can Be No Bad Faith Claim Where Coverage Is Excluded Under The Policy. .............................................................................. 15

        B.    At A Minimum, There Is A Debatable Reason For Liberty's Coverage Denial Prohibiting Any Bad Faith Claim................................................ 16

        C.    Plaintiffs Have Not Plausibly Pled Their Bad Faith Claim. .................... 17

    IV.    Liberty Insurance Corporation Is The Only Liberty Entity That Issued Plaintiffs An Insurance Policy........................................................................... 20

CONCLUSION...................................................................................................... 20

## **INTRODUCTION**

Plaintiffs seek coverage for a brown recluse spider infestation at their home that, by their own admission, occurred before Liberty ever issued them an insurance policy. Specifically, Plaintiffs purchased a homeowners' insurance policy from Liberty effective March 1, 2014 but admit in their Complaint that the infestation had occurred, at the latest, in March 2013—nearly a year before Plaintiffs had coverage with Liberty.

In addition to the fact that Plaintiffs did not have coverage with Liberty at the time of the alleged loss, the only policies ever issued by Liberty have an exclusion that excludes from coverage any loss caused by vermin or insects—i.e., a spider infestation. Plaintiffs attempt to circumvent this plainly worded exclusion by claiming that spiders are "arachnids" rather than insects or vermin. But Alabama law requires that ordinary meanings, rather than technical or scientific meanings, be ascribed to terms in an insurance policy. Aside from common sense, an examination of dictionary definitions and other decisions analyzing similar exclusions makes it clear that spiders are considered insects and/or vermin within the meaning of the Policy. For example, Merriam-Webster and Dictionary.com both expressly include spider in their respective definition of insects and describe creatures which clearly encompass spiders in their definition of vermin. As such, a brown recluse infestation is excluded from coverage.

Plaintiffs' claim was also properly denied for other reasons as well, including without limitation, that the infestation was not a "direct physical loss" as required by the subject policies. (*See* Doc. 1-1, at 14, Section I – Perils Insured Against, Coverage A – Dwelling and Coverage B – Other Structures, Insuring Agreement). For the purposes of this Motion to Dismiss, however, Liberty assumes all facts in the Complaint as true. As such, Liberty refers throughout this Motion to Dismiss to the "loss," but for avoidance of doubt, Liberty does not waive and expressly preserves the right to argue that the brown recluse spider infestation does not constitute a loss under the subject policies. However, to the extent the infestation was a loss, it occurred before there was coverage with Liberty

## <u>ALLEGATIONS OF COMPLAINT</u>

Plaintiffs allege they purchased their home at 326 Bellevue Drive, Gadsden, Alabama (the "Property") on or about March 5, 2008. After moving into the Property, they allege as follows:

14.    After moving into the HOME, the Plaintiffs discovered that the HOME was infested with a large colony of highly venomous brown recluse spiders.

15.    Effort at eradication of the brown recluse spiders in the HOME have failed.

16.    In March 2013, the Plaintiffs hired Knox Pest Control to eradicate the brown recluse spider infestation at the HOME.

17.    On March 25, 2013, Knox Pest Control treated the HOME with both liquid chemical pesticide and powder pesticide in an effort to

2

eradicate the brown recluse spider infestation.

18.    These treatment efforts were unsuccessful and the brown recluse spider infestation remained at the HOME.

(Doc. 1, at ¶¶ 14-18).

Nearly a year later, Plaintiffs first applied for coverage with Liberty and were issued homeowners' insurance policy number H37-258-033598-70 with a policy period of March 1, 2014 through March 1, 2015 (the "Policy"). (*Id.* at ¶ 31; Doc. 1-1).[1] The Policy stated, in pertinent part, as follows:

AGREEMENT

We will provide the insurance described in this policy in return for the premium and compliance with all applicable provisions of this policy.

SECTION I – PERILS INSURED AGAINST

COVERAGE A – DWELLING and COVERAGE B – OTHER STRUCTURES

We insure against risk of direct loss to property described in Coverages A and B only if that loss is a physical loss to property. We do not insure, however, for loss:

…

2. Caused by:

…

e. Any of the following:

---

[1] According to the Complaint, Plaintiffs also renewed the Policy for the 2015-2016 policy year and 2016-2017 policy year. (Doc. 1, at ¶¶ 52-53). Each policy has the same material terms, conditions, and exclusions, and accordingly, only the 2014-2015 Policy is referenced herein.

…

(7) Birds, vermin, rodents, or insects.

…

SECTIONS I AND II – CONDITIONS

1. Policy Period. This policy applies only to loss in Section I or "bodily injury" or" property damage in Section II, which occurs during the policy period.

(Doc. 1-1, at 14, 23).

Shortly after the Policy was issued, Plaintiffs made further attempts to treat the brown recluse infestation, but such attempts allegedly failed. (*Id.* at ¶¶ 19, 20).

In September 2016, more than three and a half years after the infestation occurred (at the latest), Plaintiffs filed a claim with Liberty, claiming that the Property was a total loss due to the brown recluse infestation. (*Id.* at ¶¶ 29, 56). Liberty denied coverage under the Policy. (*Id*. at ¶ 62). After Liberty denied their claim, Plaintiffs filed this lawsuit.

## LEGAL STANDARD

A district court should grant a motion to dismiss "if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984) (citation omitted). While the Court must take all factual allegations made in a complaint as true, the United States Supreme Court heightened a plaintiff's pleading requirements in *Bell*

4

*Atlantic Corporation v. Twombly*. 550 U.S. 544 (2007). In order to survive a motion to dismiss, the "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all of the allegations in the complaint are true." *Id*. at 555 (internal quotations and citations omitted).

Specifically, a plaintiff's claim must be dismissed if he fails to allege "enough facts to state a claim to relief that is plausible on its face" such that the plaintiff has not "nudged [her] claims across the line from conceivable to plausible." *Id*. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Importantly, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679; *see also Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260–61 (11th Cir. 2009), *abrogated on other grounds, Mohamad v. Palestinian Auth.*, 132 S. Ct. 1702 (2012).

## ARGUMENT

## I.    Alabama Rules of Policy Interpretation.

Insurance policies, like other contracts, are governed by general rules of contract construction. *Farmers & Merch. Bank v. Home Ins. Co.,* 514 So. 2d 825

(Ala. 1987). Alabama courts enforce policies as written if their terms are unambiguous. *Safeway Ins. Co. of Ala. v. Herrera*, 912 So. 2d 1140, 1143 (Ala. 2005). Whether a provision of an insurance policy is ambiguous is a question of law, for the court to decide. *Id.* Under Alabama law, "the test to be applied by a court in determining whether there is an ambiguity is not what the insurer intended its words to mean, but what a reasonably prudent person applying for insurance would have understood them to mean." *State Farm Fire & Cas. Co. v. Slade* 747 So. 2d 293, 309 (Ala. 1999). The courts will not allow "strained or twisted reasoning" in order to create an ambiguity. *Herrera*, 912 So. 2d at 1143. Generally, if a court determines that the critical phrase or provision is unambiguous, it will not consider extrinsic evidence. *Federated Guar. Life Ins. Co. v. Dunn*, 439 So. 2d 1283, 1285 (Ala. Civ. App. 1983). Additionally, courts will not read additional conditions into an unambiguous policy. *City of Gadsden v. Boman*, 143 So. 3d 695, 705 (Ala. 2013). The text-focused approach applies even when the court is considering a policy provision excluding coverage, as Alabama courts have held that they will enforce unambiguous exclusions. *Nationwide Mut. Ins. Co. v. Thomas*, 103 So. 3d 795, 805 (Ala. 2012); *St. Paul Ins. Co. v. Chilton-Shelby Mental Health Ctr.*, 595 So. 2d 1375, 1377 (Ala. 1992).

While courts will generally defer to the definition of a defined term, the lack of a definition does not render a word or phrase ambiguous. Rather, the court will

construe the undefined words and phrases "according to the meaning a person of ordinary intelligence would reasonably give [them]." *Twin City Fire Ins. Co. v. Alfa Mut. Ins. Co.*, 817 So. 2d 687, 692 (Ala. 2001). Importantly, courts should not define words using "the technical, philosophical, **or scientific meanings of the terms** . . . . It is, rather, the meaning which would be attached by an ordinary person of average understanding . . . ." *Liggans R.V. Ctr. v. John Deere Ins. Co.*, 575 So. 2d 567, 571 (Ala. 1991) (emphasis added) (citing Appleman, *Insurance Law and Practice*, Rev. Vol. 13 §§ 7383, 7384); *see also Herrera*, 912 So. 2d at 1144 (declining to use "legal" definition in *Black's Law Dictionary* and instead using Merriam-Webster's dictionary as evidence of "ordinary meaning.").

Plaintiffs, as the insureds, bear the burden of establishing coverage by demonstrating that a claim falls within the Policy. *Hartford Fire Ins. Co. v. Mitchell Co.,* No. CIV.A. 08-00623-KD-N, 2010 WL 5239246, at *5 (S.D. Ala. Dec. 15, 2010). Liberty, as the insurer, bears the burden of establishing that Policy exclusions apply. *Id*.

## II.   Plaintiffs' Breach of Contract Claim (Count 1) Fails Because There Is No Coverage Under The Policy.

Under Alabama law, the elements of a breach of contract claim are: "(1) a valid contract binding the parties; (2) the plaintiffs' performance under the contract; (3) the defendant's nonperformance; and (4) resulting damages." *Shaffer v. Regions Fin. Corp.*, 29 So. 3d 872, 880 (Ala. 2009) (quoting *Reynolds Metals*

*Co. v. Hill*, 825 So. 2d 100, 105 (Ala. 2002)). Here, Plaintiffs claim that Liberty breached the Policy by failing to provide coverage for their brown recluse infestation. However, as explained in more detail below, the purported loss occurred before the policy period began, and in any event, is excluded under the Insect/Vermin Exclusion.

A.      **Plaintiffs' Seek Coverage For An Alleged Loss That, By Their Own Admission, Occurred Well Before Coverage With Liberty Began.**

Plaintiffs' seek coverage under the Policy for a brown recluse infestation at the Property. However, by their own admission, the brown recluse infestation occurred in 2013—nearly a year prior to the issuance of the Policy. Because the Policy does not provide coverage for losses that occur outside the policy period, and the loss here (brown recluse infestation) occurred before the policy period began, Plaintiffs' claim for coverage fails as a matter of law.

Here, the Policy expressly provides that "[t]his policy applies only to loss in Section I . . . which occurs during the policy period." (Doc. 1-1, at 23, Sections I and II – Conditions, ¶ 1).[2] Plaintiffs admit in their Complaint that they first purchased coverage with Liberty "with a policy period of March 1, 2014 through March 1, 2015." (Doc. 1, at ¶ 31). Thus, the Policy would only cover a brown

---

[2] Section I is the Property Coverage under the Policy and the only coverage section at issue in Plaintiffs' Complaint.

recluse infestation—if at all[3]—if the infestation occurred *after* March 1, 2014. Plaintiffs, however, admit in their Complaint that the brown recluse infestation occurred at the latest in March 2013—nearly a year before the Policy was effective. Plaintiffs allege they discovered the infestation shortly after moving into their home in 2008. Plaintiffs also allege that "[i]n March 2013, the Plaintiffs hired Knox Pest Control to eradicate the brown recluse spider infestation at the HOME" and that despite treatment efforts, "the brown recluse spider infestation remained at the HOME." (Doc. 1, at ¶¶ 16, 18). Because by Plaintiffs' own admission the loss (the brown recluse infestation) occurred prior to the policy period, there is necessarily no coverage under the Policy, and as such Liberty properly denied Plaintiffs' claim. *See Transamerica Leasing, Inc. v. Institute of London Underwriters*, 267 F.3d 1303, 1310-11 (11th Cir. 2001) (reversing district court and holding that insured was required to, and had failed to, submit evidence demonstrating that loss occurred during policy period) ("*Transamerica*"); *Nationwide Mut. Ins. Co. v. Gibson*, No. 2:08-cv-453-JHH, 2009 WL 10687856, at *7-8 (N.D. Ala. Sept. 1, 2009) (holding that moisture and mold damage to home occurred before policy period and therefore was not covered); *KB Home v. The Travelers Ins. Co.*, 339 F. App'x 910, 911 (11th Cir. 2009) (affirming district court's judgment in favor of insurer on claims that were filed prior to effective date

---

[3] As explained above, Liberty contends that the brown recluse infestation is not a loss under the Policy because, *inter alia*, it does not constitute a "direct loss" or a "physical loss" to the Property.

of policy); *Schvartzman v. Am. Sec. Ins. Co.*, No. 08-23494, 2009 WL 10668630, at *3 (S.D. Fla. Aug. 6, 2009) (granting judgment in favor of insurer and holding that insured failed to demonstrate that vandalism to property occurred during the policy period).

*Transamerica* is instructive. In *Transamerica*, the lessor of ocean cargo containers (Transamerica) entered into various lease agreements with a Venezuelan government shipping line (CAVN). 267 F.3d at 1305. In July 1994, CAVN informed Transamerica that at least 500 pieces of equipment had been lost, and ultimately Transamerica submitted a claim for the loss of 944 cargo containers. *Id.* at 1306. The insurer denied the claim because there was no proof submitted regarding when the cargo containers were lost and accordingly, whether the loss fell within the policy period. *Id.* The trial court held for Transamerica, stating that the burden of proof was on the insurers to prove that the loss *was not* in the policy period, rather than on the insured to prove that the loss occurred *during* the policy period. *Id.* at 1307. The Eleventh Circuit reversed, and held that the burden was on the insured to demonstrate that any loss occurred within the policy period. It stated:

> proof that a loss occurred within the policy period is a predicate to the application of the policy. Thus, as *Morrison* indicates, the burden of proving that the loss occurred during the policy period is properly on the insured.... Our holding should not be read as requiring an insured to prove ... the precise time during the policy period at which the loss occurred. We hold only that the insured must show that a loss did occur at some time within the policy period, and that the jury may not engage in speculation in concluding that a loss occurred within that

period.

*Id.* at 1311.

Here, just as in *Transamerica*, the burden to show that the loss occurred within the policy period falls on Plaintiffs. However, here, Plaintiffs can <u>never</u> show that the loss occurred within the policy period because they *admit* in their Complaint that the loss occurred, at the latest, <u>a year before the effective date of the Policy on March 1, 2014</u>. (Doc. 1, at ¶¶ 16-18). Thus, because Plaintiffs could never plead any set of facts demonstrating that the loss occurred during the policy period, there is—as a matter of law—no coverage under the Policy, and as such, their breach of contract claim is due to be dismissed.

**B.    Plaintiffs' Loss Is Excluded Under The Insect/Vermin Exclusion Of The Policy.**

1.    <u>Alabama Courts Use The Ordinary Meaning Of Terms When Interpreting Insurance Policy Terms.</u>

As explained above, under Alabama law, courts apply the ordinary meaning to terms in insurance policies. In this regard, the court will construe any undefined words and phrases "according to the meaning a person of ordinary intelligence would reasonably give [them]." *Twin City Fire Ins. Co. v. Alfa Mut. Ins. Co.*, 817 So. 2d 687, 692 (Ala. 2001). Importantly, courts should not define words using "the technical, philosophical, **or scientific meanings of the terms** . . . . It is, rather, the meaning which would be attached by an ordinary person of average

understanding . . . ." *Liggans R.V. Ctr. v. John Deere Ins. Co.*, 575 So. 2d 567, 571 (Ala. 1991) (emphasis added) (citing Appleman, *Insurance Law and Practice*, Rev. Vol. 13 §§ 7383, 7384); *see also Herrera*, 912 So. 2d at 1144 (declining to use "legal" definition in *Black's Law Dictionary* and instead using Merriam-Webster's dictionary as evidence of "ordinary meaning."). This approach applies even when the court is considering a policy provision excluding coverage, as Alabama courts have held that they will enforce unambiguous exclusions. *Nationwide Mut. Ins. Co. v. Thomas*, 103 So. 3d 795, 805 (Ala. 2012); *St. Paul Ins. Co. v. Chilton-Shelby Mental Health Ctr.*, 595 So. 2d 1375, 1377 (Ala. 1992).

      2.   <u>The Ordinary Meaning Of "Insects" And "Vermin" Includes Spiders.</u>

The Policy excludes any loss "caused by . . . [b]irds, vermin, rodents, or insects." (Doc. 1-1, at 14, Section I – Perils Insured Against, Coverage A – Dwelling and Coverage B – Other Structures, ¶ 2.e.(7)). Plaintiffs allege that the loss to their home was caused by a brown recluse spider infestation. Thus, if spiders are "vermin" or "insects"—as those terms are ordinarily understood—than the Policy does not provide coverage for the brown recluse infestation.

While the Policy does not define "insects" or "vermin," when determining the ordinary meaning of terms of an insurance policy, Alabama courts have looked to dictionary definitions to determine what an ordinary person would understand them to mean. *Herrera*, 912 So. 2d at 1144; *Slade*, 747 So. 2d at 309. Here,

Merriam-Webster defines "insect" as "any of numerous small invertebrate animals (**such as spiders** or centipedes) that are more or less obviously segmented—not used technically." (emphasis added). Dictionary.com also defines "insect" as "any small arthropod, such as a **spider**, tick, or centipede, having a superficial, general similarity to the insects." (emphasis added). In addition, Merriam-Webster defines "vermin" as "small common harmful or objectionable animals (such as lice or fleas) that are difficult to control" and Dictionary.com defines "vermin" as "noxious, objectionable, or disgusting animals collectively, especially those of small size that appear commonly and are difficult to control…"

Similarly, at least one court tasked with determining the meaning of "vermin" under a similar exclusion stated that spiders constituted "vermin." *See Gregory v. Nationwide Mut. Ins. Co.*, No. CIV S-10-1872 KJM EFB, 2012 WL 6651342, at *5 (E.D. Cal. Dec. 19, 2012).[4] In *Gregory*, the plaintiffs sued their homeowner's insurer for breach of contract and bad faith alleging that their insurer breached the homeowners' insurance policy by denying a claim for a mite infestation under a nearly identical Insect/Vermin Exclusion. *Id.* at *2-3. The Court held that the term "vermin" included mites based on the Merriam-Webster's Dictionary definition and the "objectively reasonable understanding of the term." *Id.* at *5. In so holding, the Court stated that not every creature could be listed in

---

[4] Research has not produced any Alabama state court or federal court decision dealing with the interpretation of a similar Insect/Vermin Exclusion.

the Policy, and stated "[c]reatures potentially described as vermin, including skunks, snakes, **and spiders**, were not named in the exclusions. <u>Yet an objectively reasonable insured would understand the policy to exclude coverage for loss caused by these creatures because of the broad definition of vermin</u>." *Id.* (emphases added). The Ninth Circuit affirmed on appeal, stating that the vermin exclusion clearly covered mites. *Gregory v. Nationwide Mut. Ins. Co.*, 611 F. App'x 410 (9th Cir. 2015). Put simply, the only reasonable and ordinary meaning of both "insect" and "vermin" includes spiders, and as such, the Insect/Vermin Exclusion excludes coverage for Plaintiffs' claim caused by a brown recluse infestation.

Rather than apply the ordinary meaning to "insect" and "vermin," Plaintiffs use "twisted and strained reasoning" by ascribing a technical and scientific meaning to the Insect Exclusion. Plaintiffs claim that the Insect/Vermin Exclusion does not apply because "spiders are not classified in the field of entomology as insects" and "[s]cientific literature in the field of entomology classify spiders as arachnids." (Doc. 1, at ¶¶ 36-37). However, as noted above, the interpretation of terms in an insurance policy cannot be based on technical or scientific meanings. Plaintiffs' references to specific entomological definitions and "scientists with specialization in entomology" are textbook examples of ascribing scientific and technical meaning, rather than ordinary meaning, to policy terms. *See Liggans*, 575

So. 2d at 571; *Herrera*, 912 So. 2d at 1144.

In sum, the ordinary and reasonable interpretation of "insect" and "vermin" clearly includes spiders, as evidenced by the dictionary definitions and courts interpreting similar terms. Plaintiffs' only attempts to distinguish the exclusion is by resorting to highly scientific and technical meaning, which is expressly prohibited under Alabama law. As such, Liberty's denial of Plaintiffs' claim for loss caused by a brown recluse infestation was proper under the Insect/Vermin Exclusion.

## III.   Plaintiffs' Bad Faith Claim (Count 2) Fails As A Matter Of Law.

Plaintiffs' also bring a bad faith claim in Count 2 arising from Liberty's denial of their claim. Plaintiffs' bad faith claim fails for three reasons. First, and most fundamentally, because coverage is excluded under the Policy for the reasons stated above there can be no bad faith as a matter of law. Second, Liberty—at a minimum—had an arguable reason for denying coverage further precluding any bad faith claim. Third, coverage issues aside, Plaintiffs have alleged no factual support for their purported bad faith claim.

### A.   There Can Be No Bad Faith Claim Where Coverage Is Excluded Under The Policy.

Alabama law is clear that a breach of the insurance policy is a necessary element of bad faith claim. *State Farm Fire & Cas. Co. v. Brechbill*, 144 So. 3d 248, 257-58 (Ala. 2013). Accordingly, "[w]ithout breach of contract, there can be

no bad faith." *Davis v. State Farm Fire & Cas. Co.*, No. 2:15-CV-02226-JHE, 2017 WL 4038407, at *11 (N.D. Ala. Sept. 13, 2017) (citing *Brechbill*, 144 So. 3d at 257).

Here, for the reasons stated above, the Policy does not provide coverage for losses that occur outside the policy period and plainly excludes coverage for damage caused by vermin and insects. Because there is no coverage under the Policy, there is no breach, and because there is no breach, as a matter of law, there can be no bad faith. *See id.* Plaintiffs' bad faith claim therefore is due to be dismissed.

### B.   At A Minimum, There Is A Debatable Reason For Liberty's Coverage Denial Prohibiting Any Bad Faith Claim.

Alabama law is also clear that "the existence of a debatable reason for denying the claim at the time the claim was denied defeats a bad faith failure to pay the claim." *Brechbill*, 144 So. 3d 248, 259 (Ala. 2013); *Se. Nursing Home, Inc. v. St. Paul Fire & Marine Ins. Co.*, 750 F.2d 1531, 1538 (11th Cir. 1985) ("Under Alabama law, an insurer cannot be held liable for the tort of bad faith unless he lacks 'a legitimate or arguable reason for failing to pay the claim.'"). *Nationwide Mut. Fire Ins. Co. v. D.R. Horton, Inc.*, No. CV 15-351-CG-N, 2016 WL 5867044, at *14 (S.D. Ala. Oct. 6, 2016) ("To defeat a bad faith claim, the defendant does not have to show that its reason for denial was correct, only that it was arguable.") (citing *Liberty Nat. Life Ins. Co. v. Allen*, 699 So.2d 138, 143 (Ala. 1997).

Accordingly, in order to make out a prima facie case of bad faith, a bad faith plaintiff must show that he/she is entitled to a directed verdict on the contract claim and, thus, entitled to recover on the contract claim as a matter of law." *Nat'l Savings Life Ins. Co. v. Dutton*, 419 So. 2d 1357, 1362 (Ala. 1982).

Here, again, Plaintiffs cannot even establish that Liberty breached the Policy, much less that they are entitled to a directed verdict on their breach of contract claim. Although Liberty maintains that the brown recluse infestation is not covered for the reasons set forth herein, at a minimum, an arguable and debatable reason existed for disclaiming coverage such that Plaintiffs' bad faith claim fails as a matter of law.

### C.     Plaintiffs Have Not Plausibly Pled Their Bad Faith Claim.

Coverage aside, Plaintiffs have not stated a claim for bad faith refusal to pay or investigate. Plaintiffs instead vaguely recite the elements of bad faith a without setting forth any facts or specific allegations which would support an actionable claim. Such conclusory allegations fall short of the *Twombly/Iqbal* pleading standard.

To survive dismissal under Rule 12(b)(6), a cause of action must satisfy the pleading requirements of Rule 8(a)(2). *See Twombly*, 550 U.S. at 555. Importantly, to satisfy Rule 8(a)(2), a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*.

Instead, a plaintiff must allege "enough facts to state a claim for relief that is plausible on its face." *Id*. at 570. "The plausibility standard … asks for more than a sheer possibility that the defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. Accordingly, "an unadorned, the-defendant-unlawfully-harmed-me accusation" is insufficient to satisfy Rule 8(a)(2), and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.

In order to prove bad faith under Alabama law, Plaintiffs must demonstrate: "(a) a breach of insurance contract, (b) the refusal to pay claim, (c) the absence of arguable reason, (d) the insurer's knowledge of such absence—with a conditional fifth element: (e) if the intentional failure to determine the existence of a lawful basis is relied upon, the plaintiff must prove the insurer's intentional failure to determine whether there is a legitimate or arguable reason to refuse to pay the claim." *Brechbill*, 144 So. 3d at 257-58. Thus, in order to satisfy Rule 8 under *Twombly* and *Iqbal*, Plaintiffs must allege specific facts that demonstrate it is plausible, rather than merely possible, that each of these elements is met.

Here, Plaintiff falls woefully short of pleading factual support to plausibly demonstrate that Liberty committed the tort of bad faith. Instead, Plaintiffs parrot the elements of a bad faith claim by stating in a conclusory fashion that "Liberty Mutual has no lawful basis for denying the Plaintiffs' claim," "Liberty Mutual has intentionally refused to pay the Plaintiffs' claim," and "Liberty Mutual has no

reasonably legitimate or arguable reason for refusing to pay the Plaintiffs' claim."
(Doc. 1, at ¶¶ 93-95).

The only two arguably "factual" allegations that Plaintiffs make in support of their bad faith claim are (1) that it is "science that spiders are arachnids and not insects" and (2) that "[n]o Liberty Mutual adjuster has ever inspected the HOME to properly investigate the severity of the brown recluse spider infestation." (*Id.* at ¶¶ 98, 100). As to the first "fact," as detailed above, the reasonable and ordinary meaning of insects (at worst) includes spiders, and as such, Liberty had a legitimate or arguable reason to refuse to pay the claim based on the Insect/Vermin Exclusion. *Brechbill*, 144 So. 3d at 257-58. Tellingly, Plaintiffs do not allege that the common and ordinary meaning of insects does not include spiders, and instead rely on hyper-technical scientific terms. Similarly, Plaintiffs' claim that Liberty never inspected the home is a red herring. Obviously, an inspection of Plaintiffs' home would not change whether spiders are considered insects, and would not change the fact that Plaintiffs admitted their loss occurred outside the policy period. Again, Plaintiffs do not (and cannot) allege that an inspection of their home would have affected Liberty's coverage decision.

Accordingly, Plaintiffs have not pled facts sufficient to plausibly allege that Liberty acted in bad faith in adjudicating or investigating their claim, and as such, their bad faith claim is due to be dismissed.

**IV.**   **Liberty Insurance Corporation Is The Only Liberty Entity That Issued Plaintiffs An Insurance Policy.**

Plaintiffs name Liberty Mutual Insurance Company, Liberty Insurance Corporation, and Liberty Mutual Group, Inc. as Defendants and bring claims for breach of contract and bad faith against all three entities arising from the Policy. Plaintiffs' Policy—including all subsequent policy periods—was underwritten and issued by Liberty Insurance Corporation, and thus it is the only possible entity against which Plaintiffs could bring any claim premised on the Policy. (*See* Doc. 1-1, at 6) ("Coverage provided and underwritten by Liberty Insurance Corporation"). Thus, Liberty Mutual Insurance Company and Liberty Mutual Group, Inc. are due to be dismissed for this separate and independent reason.

## CONCLUSION

For the reasons set forth above, Liberty respectfully requests that this Court dismiss Plaintiffs' Complaint with prejudice, and grant other such relief the Court deems just and proper.

Respectfully submitted by,

*/s/ Joshua R. Hess*

Jeffrey M. Grantham
Joshua B. Baker
Joshua R. Hess
*Attorneys for Defendants Liberty Mutual Insurance Company, Liberty Insurance Corporation, and Liberty Mutual Group, Inc.*

20

OF COUNSEL:

MAYNARD, COOPER & GALE, P.C.
1901 Sixth Ave. North
Birmingham, AL 35203
Telephone: 205.254.1000
Fax: 205.254.1999

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the above and foregoing has been served upon the following counsel by filing via CM/ECF and/or placing a copy of same in the United States Mail, properly addressed and postage prepaid, this the 15th day of October, 2018:

Thomas F. Campbell
Campbell Law PC
5336 Stadium Trace Parkway
Suite 206
Birmingham, AL 35244
Phone: 205-278-6650
Fax: 205-278-6654
Email tcampbell@campbelllitigation.com
        jbowers@campbelllitigtion.com


*/s/ Joshua R. Hess*
**OF COUNSEL**