FILED
2018 Nov-02 PM 08:16
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | |
|---|---|
| **MAGGIE J. ROBINSON and** | ) |
| **CODY ROBINSON,** | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| **vs.** | ) **CIVIL ACTION NO. 4:18-CV-1509-ACA** |
| | ) |
| **LIBERTY MUTUAL** | ) |
| **INSURANCE COMPANY; et al.** | ) |
| | ) |
| **Defendants.** | ) |

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

COMES NOW Plaintiffs, Maggie J. Robinson and Cody Robinson (hereinafter collectively "Robinsons"), and submit this Memorandum of Law in opposition to the Motion to Dismiss (Doc. 6) filed by the Defendants, Liberty Mutual Insurance Company, Liberty Insurance Corporation, and Liberty Mutual Group, Inc. (hereinafter collectively referred to as "Liberty") as follows:

## Introduction

The fundamental basis of Liberty's Motion to Dismiss ignores one of the most fundamental rules governing resolution of the ultimate coverage issue of the case. Filing the motion without discussing this rule and its importance exposes the pending

1

motion as one that sits very close to the line of dilatoriness. Applying Fed. R. Evid. 201[1] to the dispute as to the meaning of "insect" and whether that includes spiders, an organism the motion concedes are scientifically classified by knowledgeable people as arachnids, shows that a jury will be called upon to make this determination.

To the extent the Motion to Dismiss invokes Fed. R. Evid. 201(c)(2)'s authority to ask the Court to take judicial notice of what is meant by "insect" in the policy, the Plaintiffs hereby demand an evidentiary hearing pursuant to Fed. R. Evid. 201 (e) at which, and after due notice that the subject will be heard at an evidentiary hearing, whether the requested judicial notice is within the discretion of the Court. The meaning of the term should be decided by a jury. As reflected by the Opposition to the Motion to Stay Discovery, more recognized dictionaries do not include spiders in the definition than the two cherry-picked references supplied by the part of the

---

[1] Rule 201. Judicial Notice of Adjudicative Facts
**(a) Scope.** This rule governs judicial notice of an adjudicative fact only, not a legislative fact.
**(b) Kinds of Facts That May Be Judicially Noticed.** The court may judicially notice a fact that is not subject to reasonable dispute because it:
**(1)** is generally known within the trial court's territorial jurisdiction; or
**(2)** can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.
**(c) Taking Notice.** The court:
**(1)** may take judicial notice on its own; or
**(2)** must take judicial notice if a party requests it and the court is supplied with the necessary information.
**(d) Timing.** The court may take judicial notice at any stage of the proceeding.
**(e) Opportunity to Be Heard.** On timely request, a party is entitled to be heard on the propriety of taking judicial notice and the nature of the fact to be noticed. If the court takes judicial notice before notifying a party, the party, on request, is still entitled to be heard.

likely Google-search that identifies readily who some published sources define the term.

An evidentiary hearing is the usual means of resolving the dispute as advised by the official commentary to Rule 201: "The usual method of establishing adjudicative facts in through the introduction of evidence, ordinarily consisting of the testimony of witnesses. …[A]djudicative facts are those to which the law is applied in the process of adjudication. They are the facts that normally go to the jury in a jury case. They relate to the parties, their activities, their properties, their businesses." 2 Administrative Law Treatise 353." The commentators also recite that, "The Model Code and the Uniform Rules are predicated upon ***indisputability*** of judicially noticed facts." (Emphasis Added).

The extent of facts a Court should judicially recognize under the applicable rules, i.e., the Federal Rules of Evidence, rather than the outlier opinion of one judge in California that is not binding here like the Rules of Evidence under which this dispute must be resolved, are narrowly limited.  As the commentary to the Rule provides:

> This rule is consistent with Uniform Rule 9(1) and (2) which limit judicial notice of facts to those "so universally known that they cannot reasonably be the subject of dispute," those "so generally known or of such common notoriety within the territorial jurisdiction of the court that they cannot reasonably be the subject of dispute," and those "capable of immediate and accurate determination by resort to easily accessible sources of indisputable accuracy." The traditional textbook treatment has included these general categories (matters of common

3

knowledge, facts capable of verification), McCormick §§324, 325, and then has passed on into detailed treatment of such specific topics as facts relating to the personnel and records of the court, *Id.* §327, and other governmental facts, *Id.* §328.

There is no dispute but that the Court cannot resolve the basic question presented without an evidentiary hearing where even dictionary definitions which are the only basis of the motion are in conflict. There is almost as little dispute as to the outcome of that hearing: The Court should conclude that a jury will resolve the meaning. Prior to the evidentiary hearing, Defendants should answer the pending discovery because some of that discovery asks Defendants to reveal how it uses the term and who it or its instrumentalities have taught others that the words mean.

## <u>Standard of Review</u>

The purpose of a motion to dismiss under Federal Rules of Civil Procedure Rule 12(b)(6) is to test the sufficiency of the complaint, and not to decide the case on the merits. Rule 8(a)(2) of the FRCP requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." FED.R.CIV.P. 8(a)(2). A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief. *Bell Atlantic Corp. v. Twombl*y, 127 S.Ct. 1955 (2007). When analyzing the adequacy of a complaint's allegations under Fed. R. Civ. P. 12(b)(6), we must accept as true all the Complaint's factual allegations and view them in the light most favorable to the plaintiff. *Wilson v. University of*

*Alabama Health Services Foundation, P.C.*, 2017 WL 6397654 at *2 (Ala. 2017) (quoting *Ex parte Austal USA, LLC.*, 233 So. 3d 975, 981 (Ala. 2017)). Consequently, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *Bell Atlantic Corp. v. Twombl*y, 127 S.Ct. 1955, 1964 (2007). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Id.* at 1959 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The Court does not consider "whether the pleader will ultimately prevail but whether the pleader may possibly prevail." *Ex parte Austal USA, LLC.*, 233 So. 3d at 981 (quoting *Daniel v. Moye*, 224 So. 3d 115, 127 (Ala. 2016)). The threshold of sufficiency that a complaint must meet to survive a motion to dismiss is exceedingly low. *Brooks v. Blue Cross and Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1368 (11th Cir. 1997).

## ARGUMENT

Liberty has filed their Motion to Dismiss the Robinsons' Complaint (Doc. 6) alleging two things. First, that the Robinsons loss occurred before the policy period began and is therefore excluded. Second, Liberty assert that there is no coverage under the policies because of an exclusion for damage caused by "insects and/or vermin."

Liberty misstates the allegations of the Complaint by asserting that Liberty denied the claim because spiders are either "insects or vermin" and that the common

understanding of "insects" includes spiders (i.e., arachnids). This is not what the Complaint alleges.  The Complaint alleges that one basis was given for denying the claim – that spiders are insects.  The Complaint does not allege Liberty used the vermin exclusion as a basis of denying the claim. Likewise, the Complaint does not only allege that the scientific classification of insects excludes arachnids as the motion claims.  The Complaint alleges what we all know as former kindergartners ourselves, insects have six legs and usually wings and spiders are arachnids and have eight legs. The Complaint alleges that insects and arachnids are commonly understood to be different things by the public and that Liberty even underwrites programs that educate school children that they are different.

## I.      Alabama Rules of Policy Interpretation

For purposes of a Motion to Dismiss, the allegations of the complaint are accepted as true and litigants do not get to change the allegations of the complaint, offer proof outside the complaint, or ignore the terms of insurance policies upon which the outcome of an appellate opinion turns.

Alabama courts enforce policies as written if their terms are unambiguous. *Safeway Ins. Co. of Ala. v. Herrera*, 912 So. 2d 1140, 1143 (Ala. 2005). The Alabama Supreme Court has subsequently reiterated that the court should not "define words it is construing based on technical or legal terms." *Smitherman v. Consumers Ins. USA, Inc.*, 927 F. Supp. 2d 1292, 1299 (M.D. Ala. 2013) (quoting

*Herrera*, 912 So. 2d at 1143). The issue in those cases cited by Liberty considered whether an exclusion for loss by "theft" in *Smitherman* and loss by "false pretenses" in *Herrera* applied, which is not at issue in this case. The Robinsons' policy explicitly and unambiguously states "We do not insure, however, for loss…caused by… any of the following: Birds, vermin, rodents, or insects." (Complaint ¶ 47). The term "insect" is neither a technical nor legal term and it should not be construed as such. Spiders are not mentioned anywhere in the policy, meaning loss to property caused by spiders is not excluded from coverage. (Complaint ¶¶ 49, 51). Liberty argues the Robinsons are "attempting to circumvent the **plainly worded exclusion** by claiming that spiders are 'arachnids' rather than insects or vermin." (Defendant's Liberty's Motion to Dismiss (hereinafter "Motion to Dismiss") p. 1) (emphasis added). By Liberty's own admission, spiders are not included in the "plainly worded exclusion" section in the policy. Spiders are arachnids, not insects. (Complaint ¶¶ 36, 37). The facts alleged in the Complaint are taken as true. Therefore, spiders are not excluded under the policy and the term insect is not ambiguous.

Liberty argues the policy terms are unambiguous and the claim is not covered. However, Liberty attempts to cover all bases and argue if the terms are considered ambiguous the claim is still not covered. Liberty states if a term in the insurance policy is ambiguous, the court's test "is not what the insurer intended its words to mean, but what a reasonably prudent person applying for insurance would have

understood them to mean." (Liberty's Motion to Dismiss p. 6) (citing *State Farm Fire & Cas. Co. v. Slade*, 747 So. 2d 293, 309 (Ala. 1999)). Liberty's rationale for denying the claim was "Liberty Mutual considered spiders insects." (Complaint ¶ 66). As stated above, it is not what the insures intended the words to mean but what an average person thinks. It is taught from a young age that spiders and insects are different. (Complaint ¶ 38). Liberty has even educated school children and the general public of the United States that spiders are arachnids. (Complaint ¶ 43). Therefore, even if this Court finds an ambiguity- which there is not- Liberty's intent that spiders are considered insects is irrelevant.

An ambiguous insurance policy must be construed liberally in favor of the insured, and exceptions to coverage must be interpreted as narrowly as possible in order to provide maximum coverage to the insured. *Thorn v. American States, Ins. Co.*, 266 F. Supp. 2d 1346, 1349 (M.D. Ala. 2002) (citing *Auto-Owners Ins. Co. v. Toole*, 947 F. Supp. 1557, 1561 (M.D. Ala. 1996). If the policy is not ambiguous, the insurance contract must be enforced as written, and courts should not defeat express provisions in a policy, including exclusions from coverage, by making a new contract for the parties. *Id.* Either way this Court interprets the policy, it should deny Liberty's Motion to Dismiss.

## II.     Liberty Ignores the Terms of the Policy Which Must Be Taken As True

Liberty argues the Robinsons' breach of contract claim should be dismissed because the "loss occurred before the policy period began. . . ." (Doc 6, p. 8). Liberty cites *Shaffer v. Regions Fin. Corp.,* 29 So. 2d 872 (Ala. 2009) to list the elements of a breach of contract claim. However, as shown in the Robinsons' Complaint and explained in further detail below, the Robinsons meet these elements in that the loss occurred within the policy period and is not excluded by any clause or exclusion within the contract.

### A. The Robinsons' Loss Occurred Within the Policy Period

Liberty first argues that the Robinsons' breach of contract claim should be dismissed because it falls outside of the policy period. Liberty completely ignores the Policy's definition of an "occurrence." The term "occurrence" is defined as "an accident, **including continuous or repeated exposure to substantially the same general harmful conditions,** which results, during the policy period in (a) 'Bodily injury'; or (b) 'Property damage.'" (See Doc. 1-1, p. 9 and Doc. 1-2, p.9; hereinafter "The Policy") p. 1). Liberty ignores this definition when arguing that the loss occurred outside of the policy period as the policy specifically indicated coverage for "continuous or repeated exposure to substantially the same general harmful conditions." It does not matter that the infestation began before the policy periods began in 2014, because the ongoing brown recluse spider infestation constitutes a "continuous or repeated exposure to substantially the same general harmful

conditions" condition when the policy began in 2014 and continually throughout the coverage periods and therefore is covered under the Policy.

The three cases Liberty cites in their Motion to Dismiss do not support their argument that denying coverage was proper because the loss occurred before the policy period. The first case Liberty cites is *Transamerica Leasing Inc. v. Institute of London Underwriters,* 267 F.3d 1303 (11th Cir. 2001) ("*Transamerica*"). Liberty states that the Eleventh Circuit held "that insured was required to, and had failed to, submit evidence demonstrating that loss occurred during the policy period." (Doc. 6, p. 9 (citing *Transamerica,* 267 F.3d at 1310-11)). While it is clear from all three cases and other case law on the subject that the burden is on the insured to show that the loss occurred within the policy period, Liberty ignores the underlying fact that the circumstances that led the Eleventh Circuit to reverse the district court holding in *Transamerica* are substantially different from the circumstances in the Robinsons' case.

In *Transamerica* the plaintiff was completely unable to identify the date the loss occurred nor was the plaintiff able to even identify the number of shipping containers lost or damaged. *Transamerica,* 267 F.3d at 1306. Unlike in *Transamerica,* the Robinsons know when the "continuous or repeated exposure" to the harmful conditions of the brown recluse spider infestation occurred and can provide substantial evidence to support this claim. Liberty goes on to cite

*Transamerica* in more detail to argue that "the burden to show that the loss occurred within the policy period falls on the [Robinsons]." While the burden may shift to the plaintiff, the Robinsons have clearly plead sufficient facts in their Complaint to show that the loss occurred within the Policy period.

Liberty also misrepresents the allegations made by the Robinsons' in their Complaint when Liberty claim that the Robinsons' "*admit* in their Complaint that the loss occurred, at the latest, a year before the effective date of the Policy on March 1, 2014." (Doc. 6, p. 11 (emphasis and internal citations omitted)). The Robinsons' admit no such thing, but instead state in the Complaint that the brown recluse spider infestation *began* before the effective date of the Policy. However, looking at the policy language and the definition of "occurrence," in Liberty's policies, the loss continued throughout the policy periods and are covered, even if it *began* before the policy's effective date. When citing *Transamerica,* Liberty acknowledges the Court's "holding should not be read as requiring an insured to prove… the precise time during the policy period at which the loss occurred…[but] the insured must show that *a loss* did occur *at some time within the policy period*." (Doc. 6, p. 10 (citing *Transamerica,* 267 F.3d at 1311) (emphasis added)). While the loss *began* before the effective date of the Policy, it clearly *continued* to occur "at some time within the policy period."  Liberty admits that if the Robinsons can show that "*a*

loss" occurred "*at some time within the policy period,*" the Robinsons can certainly defeat their Motion to Dismiss.

Liberty fails to disclose that the precedent it relies upon in *Nationwide Mut. Ins. Co. v. Gibson,* 2009 WL 10687856 (N.D. Ala. Sept. 1, 2009) ("*Gibson*") rests upon the Court's enforcement of a pre-existing exclusion clause in the insurance policy that excluded coverage for ongoing conditions.  Liberty does not assert – because doing so would be a flagrant misrepresentation – that its Policy has a pre-existing condition exclusion at all.  In fact, as the Complaint alleges, and the Policy provides, an "occurrence" expressly includes ongoing dangerous conditions.

The policy in question in *Nationwide Mut. Ins. Co. v. Gibson,* 2009 WL 10687856 (N.D. Ala. Sept. 1, 2009) ("*Gibson*") had an exclusion that specifically excluded coverage for any known pre-existing conditions before the policy went into effect. The Nationwide policy stated "if the insured knew that the '"bodily injury" or "property damage" had occurred, in whole or in part' before the policy period began, 'then any continuation, change or resumption of such "bodily injury" or "property damage"… will be deemed to have been known prior to the policy period' and thus will not be covered." *Id.* at *8 (internal citations omitted). There is no such pre-existing condition language in the Robinsons' Policy and therefore Liberty's argument that this Court should dismiss the Robinsons' claim because of the holding in *Gibson*, must fail.

Liberty also misconstrues the Eleventh Circuit's opinion in cites *KB Home v. The Travelers Ins. Co.,* 339 F. Appx. 910 (11th Cir. 2009). Liberty argues the Court "affirm[ed] [the] district court's judgment in favor of insurer on claims that were filed prior to effective date of policy." (Doc. 6, p. 9-10). While the Eleventh Circuit Court is brief in the opinion and gives little background information, the underlying case, *KB Home v. St. Paul Mercury Ins. Co.,* 621 F. Supp. 2d 1271 (S.D. Fla. 2008), provides a factual history of the case. In that case, both the District and Eleventh Circuit Courts agree that the plaintiff filed the employment discrimination claim before the policy's effective date and therefore should be dismissed. *KB Home v. The Travelers Ins. Co.,* 339 F. App. at 911. The Robinsons' did not file their claim before the policy became effective.

Finally, Liberty cites *Schvartzman v. Am. Sec. Ins. Co.,* 2009 WL 10668630 (S.D. Fla. Aug. 6, 2009) stating the Court in that case "grant[ed] [a] judgment in favor or insurer and h[eld] that insured failed to demonstrate that vandalism to property occurred during the policy period." (Doc. 6, p. 10). While it is true that, much like *Transamerica*, the insured in *Schvartzman* failed to demonstrate that the loss occurred during the policy period, the circumstances are again very different from those of the Robinsons. In *Schvartzman*, the plaintiff leased property he owned beginning on September 20, 2008. 2009 WL 10668630 at *1. After a police raid caused property damage which showed the tenants had been growing marijuana, the

plaintiff filed a claim with ASIC. *Id.* ASIC denied the claim and plaintiff filed suit. *Id.* The Court found that the plaintiff "wholly failed to meet his initial burden of proof, adducing no evidence whatsoever that the damage occurred during that period, other than his own speculation." *Id.* at *3. In other words, the Court found that because the plaintiff had not seen the property during the lease period to know when damage/loss from marijuana growth occurred, he failed to meet the burden of proof. *Id.* The burden required to show affirmatively that the damage occurred *within* the policy period. *Id.* Again, the Court's meaning is misconstrued or misunderstood by Liberty.

In the Robinsons' case, it is clear when the damage to their property began and there is no question that the Robinsons have regularly seen the damage. Therefore, unlike *Schvartzman*, it is clear the Robinsons' allege sufficient facts to support their claims.

Given that the standard of review for a motion to dismiss requires all the facts alleged within the Complaint be regarded as true, the Robinsons clearly pled their continuous loss (covered by the language of the Policy itself) occurred within the policy period and Liberty's Motion to Dismiss is due to be denied.

### III.   The Complaint Alleges That Liberty Gave One Basis for Denying the Robinsons' Claim – That Spiders Are Insects

Liberty cites several cases for the principle of law that courts are to "apply the ordinary meaning to terms in insurance policies." (Doc. 6, p. 11-12) and that state the plain meaning of terms, instead of a scientific or technical meaning, applies.

The ordinary meaning of insects is not scientific nor technical, making the term unambiguous. The exclusions in the policy say "insects." As most school children and adults know, the ordinary meaning of insects do not include spiders. Liberty also knows this all too well in light of the fact that Liberty of their affiliated companies provides funding around the country to teach children the difference between spiders and insects. (See Complaint ¶¶ 39-43).

It is important to note the plain language of the Robinsons' Policy does <u>not</u> include spiders. The plain language in the policy section states only "[b]irds, vermin, rodents, or insects" are excluded. Liberty argues this Court should consider spiders "vermin" or "insects" because those terms are "normally understood" to include spiders and would thus be excluded under the policy. (Doc. 6, p. 12). If the terms of the policy are so unambiguous, as Liberty suggests, then spiders would simply fit into one of these two listed exclusions, instead of both. Considering this, it is clear Liberty seeks to avoid liability by throwing arguments onto a wall to see what sticks.

The terms "insects" and "vermin" are not defined within the Policy even though there is a section specifically for definitions. In the absence of a clearly defined term, "Alabama courts have looked to dictionary definitions to determine

15

what an ordinary person would understand [the terms] to mean." (Motion to Dismiss p. 12 (citing *Herrera,* 912 So. 2d at 1144; *Slade,* 747 So. 2d at 309)). The court in *Slade* did not find the dictionary's definition of "dwelling" helpful. 747 So. 2d at 309. Therefore, the Court gave the rational and practical interpretation of the term instead of the dictionaries' definition. *Id.*

Liberty cherry picks two dictionaries that include spiders in their definition of the word "insect" (Doc. 6, p. 13), but these two dictionaries are outliers. Liberty suggests, based on these two dictionaries, spiders should also be considered vermin because they are small, objectionable animals that are "difficult to control." These definitions are far too broad and thus not applicable. If courts were to use this standard as a basis for what should and should not be included, everything "difficult to control" (which would include almost anything an insured would file an insurance claim for) should be excluded. This would mean that the coverage would exclude all problems that an insured faced, rendering any sort of Policy issued by Liberty useless. The overwhelming number of dictionaries describe insects as what they are – creatures with six legs.

See, https://en.oxforddictionaries.com/definition/insect;

https://dictionary.cambridge.org/us/dictionary/english/insect;

https://www.macmillandictionary.com/us/dictionary/american/insect;

https://www.collinsdictionary.com/us/dictionary/english/insect;

http://www.yourdictionary.com/insect?direct_search_result=yes .

Liberty cites a California case, *Gregory v. Nationwide Mut. Ins. Co.,* No. CIV S-10-1872 KJM EFB, 2012 WL 6651342 (E.D. Cal. Dec. 19, 2012) in an attempt to convince this Court that because one court in California extended an Insect/Vermin exclusion to include mites in the term "vermin", that this Court should do the same. First, as stated above, defining "vermin" in the way that Liberty seeks is too broad and would exclude almost every problem an insured would encounter. It is noteworthy that the case Liberty cites is not from a court within Alabama. While Liberty recognized this in a small footnote, an Alabama court is <u>not</u> bound by the California court's ruling. "[F]ederal courts must follow the interpretation of Alabama law made by the highest court of that State absent a constitutional violation." *Hunt v. Tucker*, 93 F.3d 735, 737 (11th Cir. 1996) (citing *McCoy v. Newsome,* 953 F.2d 1252, 1264 (11th Cir. 1992); *Estelle v. McGuire,* 502 U.S. 62 (1191); *Pulley v. Harris,* 465 U.S. 37 (1984)). Here, there has been no such interpretation by Alabama courts. "Where [the state] court has not spoken. . . [the federal court] must predict how the highest [state] court would decide this case." *Turner v. Wells,* 879 F.3d 1254, 1262 (11th Cir. 2018). Liberty's implication that a single California case should control how an Alabama Federal Court should rule is ill-founded. As Liberty cites to a single California case, there is no way to view the

17

Ninth Circuit's decision in *Gregory* as a majority rule. Further, courts "generally presume that Alabama courts would adopt the majority view on a legal issue in the absence of indications to the contrary." *Bobo v. Tennessee Valley Authority,* 855 F.3d 1294, 1304 (11th Cir. 2017).

If Liberty seeks to apply an "objectively reasonable understanding of the term," then this Court should look to how an objectively reasonable person would view the term "insects" within the Policy. (Doc. 6, p. 14). The plain meaning and "objectively reasonable understanding" of the term "spiders" is an arachnid and <u>not</u> an insect. Therefore, Liberty's argument that spiders are considered "insects" or "vermin" must fail. The plain meaning of the term "spiders" clearly shows the exclusion does not apply here. Defining spiders as arachnids is neither technical nor scientific. It is simply how a reasonably objective person would interpret the meaning of spider.

## IV.   Bad Faith Claim

Liberty argues the Robinsons' claim of bad faith refusal to pay and investigate fails as a matter of law for three reasons: (1) coverage is excluded from the policy; (2) Liberty had an arguable reason for denying coverage; (3) facts are not sufficiently plead. (Motion to Dismiss p. 15).  However, as shown in the Robinsons' Complaint and in further detail below, the Robinsons' easily defeat Liberty's assertions to overcome their Motion to Dismiss.

18

## A. The Loss is Clearly Within the Policy Periods

It is clear from the extensive reasons stated in the previous sections that the loss occurred within the policy period and is not excluded from coverage. Therefore, Liberty breached their contract with the Robinsons when they refused to pay the claim. The Robinsons' policy states it will pay for bodily and property damages caused by an "occurrence." (Doc. 1-1, p. 9 and Doc. 1-2, p.9) and Liberty's Policy defines an occurrence as "continuous or repeated exposure to substantially the same general harmful conditions."

The insurer, in preparing its policy, has the burden of using language that is clear and precise. *Travelers Indem. Co. v. Whalley Constr. Co.*, 160 Ga. App. 438, 440, 287 S.E.2d 226 (1981). The language in the Robinsons' policy is not ambiguous. Insurance companies cannot use the vagaries of language they drafted to escape contractual obligations. *Arrow Exterminators, Inc. v. Zurich American Ins. Co.*, 136 F. Supp. 2d 1340, 1350 (N.D. Ga. 2001). Coverage is provided if property damage "occurs during the policy period." The Policy does not state that coverage is provided if property damage "occurs and *is discovered or manifested during the policy period*." A continuous harmful condition existed when the Policy began and has continued throughout the coverage period. Liberty cannot change the meaning of "insect" to include spiders and Liberty breached its contract with the Robinsons' when they refused to pay the claim covered under the Policy.

On September 30, 2016, the Robinsons' received a letter from Liberty noting the "Date of Loss: 8/15/2016" and the Policy "does not afford coverage for loss as a result of spider infestation." (Complaint ¶62; Doc. 1-4). Liberty's letter admits the date of loss falls within the Policy period. The plain meaning of terms must be given, as stated above, making spiders included in the Policy. Since the Policy clearly covers the loss, and Liberty refuses to pay the claim, the contract was breached. Because there was a breach of contract, there can be a claim for bad faith. *See Davis v. State Farm Fire & Cas. Co.*, No. 2:15-CV-02226-JHE, 2017 WL 4038407, at *11 (N.D. Ala. 2017).  Liberty's argument that there was no coverage or breach, fails and this Court should deny their Motion to Dismiss.

## B. Liberty Has No Reason To Deny the Robinsons' Claim

"An insurer is liable for its refusal to pay a direct claim when there is no lawful basis for the refusal coupled with actual knowledge of that fact." *Chavers v. National Security Fire Ins. Co.,* Ala., 405 So. 2d 1 (1981). No lawful basis 'means that the insurer lacks a legitimate or arguable reason for failing to pay the claim.' *Gulf Atlantic Life Ins. Co. v. Barnes,* Ala. 405 So. 2d 916 (1981). Liberty cites *State Farm Fire and Cas Co. v. Brechbill*, 144 So. 3d 248 (Ala. 2013) to support its argument there exists a debatable reason for denying the claim. In *Brechhill* the court only focused on the bad faith refusal to investigate claim and whether the defendant had a reasonable or arguable reason for denying it. The facts in *Brechbill* are significantly

different and distinguishable from the Robinsons' case. In *Brechbill* insurance adjusters visited plaintiff's home numerous times, based its denial on an engineer's findings, and repeatedly reviewed and reevaluated its own investigative facts as well as those provided by the plaintiff in support denying the claim.

Liberty **never** sent an adjuster to inspect the Robinsons' home before or after initiating the policy. (Complaint ¶100). Liberty never made any effort to investigate the claim properly and the denial of the claim was never subjected to a cognitive evaluation or review. (Complaint ¶ 101).

Recovery under a bad-faith refusal to pay or to investigate claim requires an absence of a debatable reason for the insurance company's denial. *Brechbill*, 144 So. 3d at 265. The insurer's decisional process of debatable reason is taken into consideration. See, e.g., *National Sav. Life Ins. Co. v. Dutton,* 419 So. 2d 1357, 1362 (Ala. 1982) ("Whether an insurance company is justified in denying a claim under a policy must be judged by what was before it at the time the decision was made."); *Jones v. Alabama Farm Bureau Mut. Cas. Co.,* 507 So. 2d 396, 400 (Ala. 1986) (holding that an investigation conducted after the denial of a claim cannot have served as an arguable basis for denying the claim); and *National Ins. Ass'n v. Sockwell,* 829 So. 2d 111, 130 (Ala. 2002) (noting that it is "an insurer's responsibility to marshal all of the pertinent facts with regard to its insured's claim before it refuse[s] to pay").

Liberty's claims adjuster told the Robinsons that the claim would be denied under the insect exclusion section of the Policy the day after the Robinsons' submitted their claim. (Complaint ¶57). Four days after the initial denial of the claim, Liberty informed the Robinsons the legal department was considering whether the "insect" exclusion actually applies to spiders. (Complaint ¶59). Liberty's legal department determined nine days later spiders are insects and the claim was again denied. (Complaint ¶61). It is clear Liberty did not investigate the claim before automatically denying it the day after the Robinsons' submitted it. Liberty has no legitimate reason for the denial of the Robinsons' claim of loss under the insect exclusion in the policy (Complaint ¶ 70) because everyone knows spiders are not insects. Liberty's argument fails because they cannot show any debatable reason for denying coverage and the Motion to Dismiss claims of bad-faith must be denied.

Liberty argues that for a claim of bad faith, plaintiff must show that he/she is entitled to a directed verdict on the contract claim, and, thus, entitled to recover on the contract claim as a matter of law. (Doc. 6, p. 17); *Dutton*, 419 So. 2d at 1362. Liberty fails to mention there are exceptions to this rule and that it only applies to "normal" bad faith claims, bad-faith refusal to pay. An insurer is liable for "abnormal" bad faith when it intentionally or recklessly fails to conduct an adequate investigation of the facts and submit those facts to a thorough review. See *Blackburn v. Fidelity & Deposit Co. of Maryland*, 667 So. 2d 661, 668 (Ala. 1995). Unlike in

"normal" bad faith claims, *providing an arguable reason for denying an "abnormal" bad faith claim does not defeat that claim.* See *Slade*, 747 So. 2d at 305. The directed verdict test Liberty relies on from *Dutton* is not to be read as requiring, in every case and under all circumstances, that the tort claim be barred. *Id*. Directed verdict test only applies for normal bad-faith failure to pay claims, it is not required to prove bad-faith failure to investigate. The words "entitled to a directed verdict", "in the normal case" and "ordinarily" allows for exceptions to the test. *Ex parte Blue Cross and Blue Shield of Alabama*, 590 So. 2d 270 (Ala. 1991). Liberty has not provided any sound debatable reason for denial of the claim and this Court should deny Liberty's Motion to Dismiss the Robinsons' bad faith claims.  Simply stated, the Robinsons' allege Liberty acted in bad faith, under all circumstances, when they refused to pay for the loss of use of the home under the policy or investigate the claim at all. For the purposes of a motion to dismiss, the facts as plead are accepted as true. In seeking dismissal for failure to state a viable claim, Liberty bears the "very high burden" of showing the Robinsons cannot conceivably prove any set of facts that would entitle them to relief. *See Jackam v. Hospital Corp. of Am. Mideast, Ltd.*, 800 F.2d 1577, 1579 (11th Cir. 1986). The Robinsons' allege in the Complaint all the necessary facts to assert a cause of action for bad faith refusal to pay the Robinsons' claim and bad faith refusal to investigate the Robinsons' claim. The Robinsons' paid annual premiums to have their home covered for loss, they

submitted a claim due to loss from a spider infestation, spiders are not listed under the exclusion section in the policy, and Liberty refused to pay the claim on the basis spiders are insects. (Complaint ¶¶ 55, 56, 49, 63, 66, 93, 94).  It is absolute common knowledge that spiders are arachnids, not insects. (Complaint ¶71). Therefore, Liberty has no arguable reason to deny payment of the claim. The Policy specifically excluded insects; not spiders. They are two completely different types of species and it is elementary spiders are <u>not</u> classified as insects. (Complaint ¶ 36, 38, 96). Liberty knows that spiders are not insects and cannot argue otherwise. (Complaint ¶ 34, 35, 39, 40, 41, 42, 98). Liberty knows they have no debatable or legitimate reason to deny the Robinsons' claims. Liberty knows the reason they cite, "spiders are insects", is undoubtably wrong considering all of the (1) money, (2) seminars, and (3) programs they have participated in to educate the public about the difference between spiders and insects.

The Robinsons have also sufficiently pled the last element to prove bad-faith refusal to investigate the claim. No Liberty Mutual adjuster has ever inspected the Robinsons' home to investigate and determine the amount of loss caused by the spider infestation and Liberty's actions have demonstrated a reckless failure to investigate whether the Robinsons' home is unsafe due to the brown recluse spider infestation (Complaint ¶¶100, 102).

24

The Robinsons have clearly met all of the pleading requirements necessary to overcome a motion to dismiss.

## V.      Dismissal of Any Co-Defendants is Pre-Mature

Lastly, Liberty contends that Liberty Mutual Insurance Company and Liberty Mutual Group, Inc. should be dismissed as Defendants because the Robinsons' Policy was underwritten and issued by Liberty Insurance Corporation. (Motion to Dismiss p. 20). It is premature at this point to give credence to Liberty's assertion that these Defendants should be dismissed from the lawsuit based solely on their unsupported statement in the Motion to Dismiss before any discovery has even begun to determine what role or involvement these two Defendants had in the denial of the Robinsons' claim.

WHEREFORE, based on the foregoing, the Robinsons respectfully request this Honorable Court to enter an Order denying Liberty's Motion to Dismiss in its entirety.

Dated: November 2, 2018

Respectfully submitted,

 */s/ John R. Bowers, Jr.*
THOMAS F. CAMPBELL (ASB-5900-M60T)
JOHN R. BOWERS, JR. (ASB-0769-B20J)
*Attorneys for Plaintiffs, Maggie J. Robinson and Cody Robinson*

**OF COUNSEL:**

CAMPBELL LAW, PC
5336 Stadium Trace Parkway
Suite 206
Birmingham, AL  35244
Telephone: (205) 278-6650
Facsimile: (205) 278-6654
Email:   tcampbell@campbelllitigation.com
          jbowers@campbelllitigation.com


## CERTIFICATE OF SERVICE

I hereby certify that on this the 2nd  day of November, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Jeffrey M. Grantham, Esq.
Joshua B. Baker, Esq.
Joshua R. Hess, Esq.
MAYNARD, COOPER & GALE, P.C.
1901 Sixth Avenue North
Birmingham, AL 35203
Telephone: 205.254.1000
Fax: 205.254.1999
Email: jgrantham@maynardcooper.com; jbaker@maynardcooper.com;
          jhess@maynardcooper.com


*/s/ John R. Bowers, Jr.*
OF COUNSEL