FILED
2018 Nov-16 PM 04:51
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| **MAGGIE J. ROBINSON and CODY ROBINSON** | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) **CIVIL ACTION NO.: 4:18-CV-1509-ACA** |
| **LIBERTY MUTUAL INSURANCE COMPANY, et al.** | ) ) ) ) |
| Defendants. | ) |

## DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS

JEFFREY M. GRANTHAM
JOSHUA B. BAKER
JOSHUA R. HESS

MAYNARD, COOPER & GALE, P.C.
1901 SIXTH AVENUE NORTH
SUITE 2400, REGIONS/HARBERT PLAZA
BIRMINGHAM, ALABAMA 35203-2618
(205) 254-1000
(205) 254-1999

*Attorneys for Defendants Liberty Mutual Insurance Company, Liberty Insurance Corporation, and Liberty Mutual Group, Inc.*

### A. Plaintiffs' Alleged Loss Did Not Occur During the Policy Period.

Plaintiffs allege that they discovered their loss—the brown recluse spider infestation—after moving into the Property[1] in 2008. After failing to eradicate the infestation, in March 2013, Plaintiffs hired a pest control company to eradicate the infestation with liquid and powder treatments. After these additional treatments were unsuccessful, Plaintiffs obtained homeowners' coverage from Liberty in March 2014 and proceeded to make a claim under the Policy for the spider infestation in 2016—the same infestation that they had been trying to eradicate for years. (Doc. 6 at ¶¶ 14-18, 31).

Liberty moved to dismiss Plaintiffs' breach of contract claim on the basis that the loss did not occur during Liberty's policy period as required for coverage under the Policy. Plaintiffs' <u>only</u> argument in response is that "[w]hile the loss *began* before the effective date of the Policy, it clearly *continued* to occur" within the Liberty policy period such that it constitutes a covered "occurrence" under the Policy. (Doc. 16 at 11). This argument fails for several reasons.

First, this argument fails because it is based entirely on a Policy definition that has no application to Plaintiffs' claim. The Policy defines "occurrence" to include "continuous or repeated exposure to substantially the same general harmful condition." Plaintiffs posit that even though the loss was known to them and began

---

[1] Unless otherwise defined, all capitalized terms have the same meaning as in Liberty's Motion to Dismiss. (Doc. 6).

- 1 -

well before the Policy inception in 2014, the ongoing spider infestation constitutes "continuous or repeated exposure to substantially the same general harmful conditions" continually throughout any number of coverage periods. But the "occurrence" definition is only found in the third-party liability coverage section (Section II), that is, it only applies to third-party liability claims seeking damages against Plaintiffs for covered occurrences. The definition is not found in, and has no applicability to, first-party property loss coverage section (Section I)—which is the coverage section that governs Plaintiffs' claim.[2] Plaintiffs' <u>exact</u> argument has correctly been rejected by the Eastern District of Wisconsin and Seventh Circuit Court of Appeals:

> The [insureds] seek to recover damages for the loss to the residence caused by water and mold. Such a recovery is addressed under the Safeco policy in Section I-Property Coverages. Section I of the policy explicitly and exhaustively lays out property damages that are covered and excluded by the policy. Nowhere in Section I does the policy limit property coverage to property damage caused by an 'occurrence' as is asserted by the [insureds]. <u>In fact, the word 'occurrence' appears nowhere within the property coverages section.</u>
>
> To the contrary, Section II of the Safeco policy, addressing liability coverages, does limit coverage for claims against the insured to those for 'bodily injury or property damage caused by an occurrence to which [the policy] applies.' <u>However, because the [insureds] seek</u>

---

[2] *Compare* Policy, Doc. 1-1, p. 6, Section I, Coverage A and Coverage B (stating that the Policy "insure[s] against risk of direct loss to property described in Coverages A and B only if that loss is a physical loss to property") with Policy, Doc. 1-1, p. 11, Section II – Liability Coverages (stating that the Policy provides third-party liability coverage "if a claim is made or a suit is brought against an 'insured' for damages because of 'bodily injury' or 'property damage' caused by an 'occurrence' to which this coverage applies.").

> recovery for property damage done to the residence and do not seek recovery for liability damage resulting from a claim against them, Section II of the Safeco policy is inapplicable. Therefore, the [insureds] cannot establish an initial grant of coverage under the policy by establishing that water and mold damage is an 'occurrence.'

*Miller v. Safeco Ins. Co. of Am.*, No. 06-C-1021, 2007 WL 2822011, at *4 (E.D. Wis. Sept. 27, 2007), *aff'd*, 683 F.3d 805 (7th Cir. 2012) (emphasis added).[3] Accordingly, Plaintiffs' reliance on the "occurrence" definition is entirely misplaced.

Second, while Plaintiffs do not articulate this point (and do not cite any supporting case law), they seem to suggest that they can survive dismissal under a continuing or progressive loss theory involving multiple policy triggers. This suggestion too is misplaced. Although research has produced no Alabama cases discussing the appropriate framework to address such *first-party* losses, courts have adopted three first-party approaches: the manifestation trigger, the injury-in-fact trigger, and the continuous trigger:

1. The manifestation trigger is the majority approach. Under it, coverage is triggered for loss when damage is, or should have been, known to the insured. Thus, responsibility for first-party progressive property losses falls completely on the insurer of the property at the time the loss manifests—that is, at that point in time when appreciable damage occurs and is or should be known to the insured.[4]

---

[3] *See also Port Auth. of New York & New Jersey v. Affiliated FM Ins. Co.*, 311 F.3d 226, 233 (3d Cir. 2002) (discussing important differences in two coverages in connection with progressive loss claims).

[4] *See e.g., Prudential-LMI Com. Ins. V. Superior Court*, 51 Cal. 3d 674 (Cal. 1990) (applying manifestation theory and stating that coverage is triggered when appreciable damage occurs and

2. The injury-in-fact trigger is a minority approach. Under it, coverage is triggered for loss when damage first occurs in fact. Thus, responsibility for first-party progressive property losses falls on the insurer of the property when the actual loss occurs, even if loss did not manifest itself until a later policy or later insurer came on the risk.[5]

3. The continuous trigger is another minority approach. Under it, coverage is triggered under any policy from when the damage occurs to when the damage is, or should have been, known to the insured. Thus, responsibility for first-party progressive property losses may fall on any insurer of the property from the time the cause of the loss occurs to when the damage is, or should have been, known to the insured.[6]

Importantly, ***none*** of these theories supports Plaintiffs' position here. The dispute here is not as to which policy period (or periods) between Plaintiffs' purchase of their property in 2008 and their discovery of the loss in 2013 (at the latest) applies. Though it is curious that Plaintiffs have apparently not sought coverage during those periods during which the infestation first occurred and was discovered. The dispute instead is whether a policy applied for and issued at least a

---

is or should be known to the insured); *Parker v. Worcester Ins. Co.*, 247 F.3d 1 (1st Cir. 2001) (applying manifestation theory and stating that trigger of coverage was when "real or imputed knowledge" of loss arises); *Jackson v. State Farm Fire & Cas. Co.*, 835 P.2d 786 (Nev. 1992) (holding that manifestation rule applied and that coverage was triggered when reasonable insured would be aware of notification duty under policy).

[5] *See e.g., Olde Colonial Village Condominium Council v. Millers Mut. Ins. Co.*, No. CIA.A.99C-06-187, 2002 WL 122885 (Del. Jan. 28, 2002) (applying injury in fact trigger and stating that coverage is triggered by collapse itself, not what led to it); *Nelson v. Hartford Underwriters Ins. Co.*, 630 S.E.2d 221 (N.C. App. Ct. 2006) (holding that when date of injury can be known with certainty, policies on risk at that date are triggered and that North Carolina courts looks at cause of property damage rather than when harm manifested).

[6] *See Miller v. Safeco Ins. Co. of Am.*, No. 06-C-1021, 2007 WL 2822011 (E.D. Wis. Sept. 27, 2007) (applying continuous trigger and stating that coverage triggered under policies when damage occurs up until manifestation).

year *after* Plaintiffs' discovery—and failed eradication—of the loss applies. Not surprisingly, research had not produced any reported decisions finding that an insured is entitled to coverage for a first-party loss that manifested itself and was in fact discovered by the insured a year or more prior to the inception of coverage. This is not surprising as it would lead to absurd results and would undermine the basic, fundamental insurance principle that a contract of insurance will not apply to cover a loss that has already occurred. *See e.g.*, 7 Couch on Ins. §§ 101:2 and 102:7 (discussing generally the fortuity requirement for insurance and prohibition against coverage for losses that already occurred because of the lack of risk); *St. Paul Fire & Marine Ins. Co. v. Britt*, 203 So. 3d 804, 809 (Ala. 2016) (noting that insurance covers only *fortuitous* loss).[7] In sum, no matter the theory, Plaintiffs simply are not entitled to coverage for a loss that they concede began—and indeed that they were

---

[7] Plaintiffs do note cite any case law to support their position that the loss occurred during the policy period. They do attempt to distinguish the case law cited by Liberty, but each attempt fails. First, in *Transamerica* and *Schvartzman*, the courts granted judgment in favor of the insurer where the insured could not prove that the loss occurred during the policy period. Here, Plaintiffs admit the loss occurred prior to the policy period, which makes it clear they could never show the loss arose after Liberty issued coverage. Second, while Plaintiffs' make much ado about the pre-existing exclusion in *Gibson*, the Court held—independent of any analysis of the pre-existing exclusion—that the "first wave" of damage was discovered before the policy began and was thus not covered because it did not occur during the policy period. Again, here, Plaintiffs admit the loss was discovered before the policy period began and that there was no new, independent loss, but instead that it was a continuance loss across multiple policy periods. The *KB Home* case also held that a claim filed outside the policy period was barred, just as here.

aware of and tried unsuccessfully to eradicate—at least a year before they ever applied for coverage with Liberty. [8]

### B.      The Insect/Vermin Exclusion Applies.[9]

The Policy excludes any loss "caused by … [b]irds, vermin, rodents, or insects." (Policy, Doc. 1-1, at 14, Section I – Perils Insured Against, Coverage A – Dwelling and Coverage B – Other Structures, ¶ 2.e.(7)). Plaintiffs do not dispute that Alabama courts are to apply the ordinary meaning of undefined terms in insurance policies. Nor do they dispute that Alabama court correctly look to dictionary definitions to determine the ordinary meaning of undefined terms.

Plaintiffs argue instead that Liberty "cherry picked" two dictionary definitions of "insect" and "vermin" that include spider, and they cite to five other dictionary definitions. This argument misses the mark. First, Liberty did not cherry pick any definition. It used Merriam-Webster, which is perhaps the most cited dictionary for interpreting undefined terms in insurance policies, and

---

[8] Under Plaintiffs' theory, they could claim coverage under new successive policies issued by Liberty or any other insurer in perpetuity so long as long as the spider infestation is not eradicated because of the "continued exposure."

[9] In their introduction, Plaintiffs vaguely demand (without any support) that an evidentiary hearing is needed under Federal Rule of Evidence 201 because Liberty is requesting that the Court "take judicial notice of what is meant by 'insect' in the policy." (Doc. 16). Liberty however has not requested that the Court take "judicial notice" of anything. Liberty instead is simply requesting that the Court interpret the plain language of the Policy to find that Insect/Vermin Exclusion excludes Plaintiffs' brown recluse spider infestation loss. No evidentiary hearing is needed, or warranted. *See Twin City Fire Ins. Co. v. Alfa Mut. Ins. Co.*, 817 So. 2d 687, 692 (Ala. 2001) (meaning of undefined term is for court to decide).

dictionary.com. These are hardly obscure choices. Second, three of the five dictionaries *cited by Plaintiffs* in support of their position actually include spider under the definition of insect:

- https://en.oxforddictionaries.com/definition/insect (defining insect as "any small invertebrate animal such as a **spider** or tick");
- https://www.collinsdictionary.com/us/dictionary/english/insect (defining insect as "any small arthropod, usually wingless, including **spiders**, centipedes, pill bugs, and mites");
- http://www.yourdictionary.com/insect (defining insect as "any small arthropod, usually wingless, including **spiders**, centipedes, pill bugs, and mites").

Plaintiffs also argue that the *Gregory v. Nationwide Mutual Insurance Company* case cited by Liberty is inapposite because it was a California federal court decision. Candidly, research has not produced any Alabama case deciding whether a spider is an insect or vermin. This is not surprising. Obviously *Gregory* is not binding, but it is instructive, and it appears to be the only case to have addressed this issue. The Court was expressly tasked with determining the meaning of "vermin" under a similarly worded exclusion and expressly stated "an objectively reasonable insured would understand the policy to exclude coverage for loss" caused by spiders. *See Gregory v. Nationwide Mut. Ins. Co.*, No. CIV S-10-1872 KJM EFB, 2012 WL 6651342, at *5 (E.D. Cal. Dec. 19, 2012). Plaintiffs cite no case law (Alabama or otherwise) finding that a spider is not an insect or vermin. That is because there is none.

Lastly, Plaintiffs argue that because they have alleged in the Complaint that spiders are arachnids rather than insects that "fact" must be taken as true for purposes of Liberty's Motion to Dismiss. That is, spiders are not insects because they said so in the Complaint. If that were true, Plaintiffs could call any allegation a "fact" and their Complaint could never be dismissed. This is not the law under *Twombly* or *Iqbal*. Instead, Plaintiffs must plead facts and allegations that plausibly demonstrate they are entitled to relief. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (stating that a complaint must contain more than "labels and conclusions."). Just because Plaintiffs allege that a spider is not an insect does not mean that Plaintiffs can survive dismissal under the exclusion.

In sum, the meaning of the undefined terms in the Policy are for this Court to decide. *Twin City Fire Ins. Co. v. Alfa Mut. Ins. Co.*, 817 So. 2d 687, 692 (Ala. 2001). The Court should not define these terms using "the technical, philosophical, or scientific meanings of the terms[.]" Rather, the Court should define them according to the meaning assigned "by an ordinary person of average understanding." *Liggans R.V. Ctr. v. John Deere Ins. Co.*, 575 So. 2d 567, 571 (Ala. 1991). An ordinary person understands that a spider is an insect or vermin. The Insect/Vermin Exclusion therefore applies.

### C. Plaintiffs Have Not Stated A Claim for Bad Faith.

Plaintiffs' bad faith claim still fails for three reasons.

First, if there is no coverage there can be no bad faith. Plaintiffs do not dispute this point, but instead argue that Liberty is simply wrong on its coverage arguments. As set forth above, coverage is lacking for at least two reasons and, as a result, Plaintiffs' bad faith claim necessarily fails.

Second, Liberty—at a minimum—had an arguable reason for denying coverage further precluding any bad faith claim. Liberty's coverage arguments aside, Plaintiffs' own definitions of insects that include spiders make this point. Plaintiffs attempt to circumvent the "arguable or debatable" standard by claiming they have pled an "abnormal" bad faith claim involving the failure to investigate. This fails for at least two reasons. First, after *Brechbill*, the existence of an "arguable or debatable reason" defeats both "normal" and "abnormal" bad faith claims. *Brechbill*, 144 So. 3d at 258. Second, Plaintiffs' argument that Liberty did not investigate is a red herring. Liberty denied based on the Insect/Vermin Exclusion because spiders are insects or vermin. Plaintiffs do not, and cannot, allege that any home inspection would have changed the analysis of whether spiders are insects or vermin. Thus, Liberty's purported failure to investigate would have had no effect on its coverage decision. Moreover, Plaintiffs cannot show—and indeed have not even argued—that they are entitled to a directed verdict on their breach of contract claims as required to make out a prima facie

case of bad faith. *See Nat'l Savings Life Ins. Co. v. Dutton*, 419 So. 2d 1357, 1362 (Ala. 1982).

Third, Plaintiffs have not alleged factual support for their bad faith claim. Other than threadbare recitals, Plaintiffs assert only (1) that Liberty did not inspect their home prior to disclaiming coverage and (2) that they were told by a Liberty adjustor that their claim would be denied under the Insect/Vermin Exclusion prior to the final claims determination made in connection with further legal review. These factual allegations do not state a claim for bad faith under *Twombly*/*Iqbal*.

### D. Liberty Mutual Insurance Company and Liberty Mutual Group, Inc. Did Not Issue The Policy.

The Policy under which Plaintiffs seek coverage was issued by Liberty Insurance Corporation, and not the other Liberty entities that were named. (*See* Doc. 1-1, at 6) ("Coverage provided and underwritten by Liberty Insurance Corporation"). And Plaintiffs offer no factual allegations specific to the other Liberty entities under which a claim could possibly be based outside of the Policy. Liberty Insurance Corporation therefore is the only possible entity against which Plaintiffs could bring any claim premised on the Policy. This is not some unsupported argument as Plaintiffs' suggest. The argument instead is based on the plain language of the Policy, which must be considered on Liberty's Motion to Dismiss.

Respectfully submitted by,

*/s/ Joshua B. Baker*
Jeffrey M. Grantham
Joshua B. Baker
Joshua R. Hess
*Attorneys for Defendants Liberty Mutual Insurance Company, Liberty Insurance Corporation, and Liberty Mutual Group, Inc.*

OF COUNSEL:

MAYNARD, COOPER & GALE, P.C.
1901 Sixth Ave. North
Birmingham, AL 35203
Telephone: 205.254.1000
Fax: 205.254.1999

## **CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing has been served upon the following counsel by filing via CM/ECF and/or placing a copy of same in the United States Mail, properly addressed and postage prepaid, this the 16th day of November, 2018:

Thomas F. Campbell
Campbell Law PC
5336 Stadium Trace Parkway
Suite 206
Birmingham, AL 35244
Phone: 205-278-6650
Fax: 205-278-6654
Email: tcampbell@campbelllitigation.com
　　　　jbowers@campbelllitigtion.com


　　　　　　　　　　　　　　　　　*/s/ Joshua B. Baker*
　　　　　　　　　　　　　　　　　**OF COUNSEL**