## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| **MAGGIE J. ROBINSON and CODY ROBINSON,** | } } } | |
| **Plaintiffs,** | } } | |
| **v.** | } } | **Case No.:  4:18-cv-1509-ACA** |
| **LIBERTY MUTUAL INSURANCE COMPANY, et al.,** | } } } } | |
| **Defendants.** | } | |

### MEMORANDUM OPINION

Brown recluse spiders infested Plaintiffs Maggie J. Robinson and Cody Robinson's home in Gadsden, Alabama.  Based on the spider infestation, the Robinsons filed a homeowner's insurance claim with Defendant Liberty Insurance Corporation.  Liberty Insurance Corporation denied the claim, and the Robinsons filed this lawsuit, alleging breach of contract and bad faith claims against Liberty Insurance Corporation, Liberty Mutual Group, Inc., and Liberty Mutual ("Liberty").

Before the court is Liberty's motion to dismiss the Robinsons' complaint. (Doc. 6).  As explained below, the Robinsons' loss is excluded under the relevant insurance policy.  Therefore, the court **GRANTS** Liberty's motion to dismiss.

## I.    BACKGROUND

At this stage, the court must accept as true the factual allegations in the complaint and construe them in the light most favorable to the plaintiff. *Butler v. Sheriff of Palm Beach Cty.*, 685 F.3d 1261, 1265 (11th Cir. 2012). The court may also consider exhibits attached to the complaint. *Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Cir. 2016); *see also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is part of the pleading for all purposes."). Plaintiffs attach to their complaint a copy of the relevant insurance policy, two letters, and an email. (Doc. 1-1 through Doc. 1-6). As a result, the court's description of the facts incorporates not only Plaintiffs' allegations but also the content of the exhibits attached to the complaint.

The Robinsons purchased a home in Gadsden, Alabama in March 2008. (Doc. 1 at ¶ 13). After moving into the home, the Robinsons discovered that it was infested with "a large colony of highly venomous brown recluse spiders." (Doc. 1 at ¶ 14). The Robinsons allege that "brown recluse spiders have been found in every area and room" of their home, "including inside their children's clothes, shoes, in their bathrooms and showers, under their beds, in the kitchen sink, and in light fixtures." (Doc. 1 at ¶ 25). Between 2013 and 2015, a pest control company treated the home on three occasions in an effort to eradicate the

spider infestation, but those efforts failed.  (Doc. 1 at ¶¶ 16-20).  According to the

Robinsons, the spiders continue to "permeate" their home.  (Doc. 1 at ¶ 21).

In 2014, the Robinsons purchased a Liberty Mutual LibertyGuard Deluxe

Homeowners Policy, effective May 1, 2014 through May 1, 2015 (the "Policy").

(Doc. 1 at ¶ 31; Doc. 1-1).  The Policy provides, in relevant part:

**SECTION I – PERILS INSURED AGAINST**

**COVERAGE A – DWELLING and COVERAGE B – OTHER STRUCTURES**

> We insure against risk of direct loss to property described in Coverages A and B only if that loss is a physical loss to property. We do not insure, however, for loss:
>
> …
>
> 2. Caused by:
>
> …
>
> e. Any of the following:
>
> …
>
> (7) Birds, vermin, rodents, or insects.
>
> …

(Doc. 1-1 at 14).  The Policy also states that "[t]his policy applies only to loss in

Section I or "bodily injury" or "property damage" in Section II, which occurs

during the policy period.  (Doc. 1-1 at 23).

The Robinsons renewed the Policy for the 2015-2016 and 2016-2017 policy

years.  (Doc. 1 at ¶¶ 52-53).  Each policy has the same material terms, conditions, and exclusions.  (*Compare* Doc. 1-1 *with* Doc. 1-2 *and* Doc. 1-3).

On September 15, 2016, the Robinsons submitted a claim to Liberty for loss of use of their home due to the spider infestation.  (Doc. 1 at ¶ 56).  On September 16, 2016, Liberty Claims Adjuster Thomas Curcio told Mr. Robinson that Liberty would deny the claim based on the Policy's insect exclusion.  (Doc. 1 at ¶ 57). Later on September 16, 2016, Mr. Curcio told Mr. Robinson that the claim had been submitted for "higher review."  (Doc. 1 at ¶ 58).  On September 20, 2016, Mr. Curcio told Mr. Robinson that Liberty's legal department was reviewing the claim, and that it would take two weeks for Liberty to issue an opinion on whether the insect exclusion in the Policy applied to spiders.  (Doc. 1 at ¶ 59).  During the September 20, 2016 conversation with Mr. Robinson, Mr. Curcio admitted that spiders are not insects and that the exclusion would not apply.  (Doc. 1 at ¶ 60). On September 29, 2016, Mr. Curcio informed the Robinsons that Liberty's legal department had advised that spiders are insects, and Liberty would deny the claim. (Doc. 1 at ¶ 61).

On September 30, 2016, Mr. Curcio, on behalf of Liberty, sent the Robinsons a letter regarding their claim.  (Doc. 1 at ¶ 62; *see* Doc. 1-4 at 2-3).  The letter states, in relevant part:

> As we recently discussed, we have completed our investigation of your homeowner's claim, which revealed a brown recluse spider

infestation to the home.

After a careful investigation of your claim, we have determined that your policy does not afford coverage for loss as a result of spider infestation.

The applicable policy provisions are as follows:

**SECTION I – PERILS INSURED AGAINST**

COVERAGE A – DWELLING and COVERAGE B – OTHER STRUCTURES

We insure against risk of direct loss to property described in Coverages A and B only if that loss is a physical loss to property. We do not insure, however, for loss:

2. Caused by:
      e. Any of the following:
            (7) Birds, vermin, rodents, or insects.

(Doc. 1-4 at 2) (emphasis in original).

Immediately after receiving Liberty's September 30, 2016 letter, Mr. Robinson tried to contact Mr. Curcio's supervisor, Emily Rennert. Mr. Robinson left a message for Ms. Rennert and asked her to call him to discuss the denial of the Robinson's claim. (Doc. 1 at ¶ 65). On October 3, 2016, Ms. Rennert called Mr. Robinson and told him that Liberty considers spiders insects, and that was the basis for the denial of the claim. (Doc. 1 at ¶ 66). On October 4, 2016, Mr. Robinson sent a letter to Ms. Rennert requesting that Liberty reconsider the denial of the Robinsons' claim. (Doc. 1 at ¶ 68; *see* Doc. 1-5 at 2-8). On October 6, 2016, Ms. Rennert sent an email to the Robinsons explaining that Liberty's

"coverage position remains the same." (Doc. 1 at ¶ 69; *see* Doc. 1-6 at 2). Liberty continues to deny the Robinsons' claim. (Doc. 1 at ¶ 80).

Based on these allegations, the Robinsons filed this lawsuit, asserting breach of contract and bad faith claims against Liberty. (Doc. 1). Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Liberty asks the court to dismiss all of the Robinsons' claims. (Doc. 6).

## III. DISCUSSION

A Rule 12(b)(6) motion to dismiss attacks the legal sufficiency of the complaint. "To survive a motion to dismiss, the plaintiff must plead 'a claim to relief that is plausible on its face.'" *Butler*, 685 F.3d at 1265 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### 1. *Breach of Contract*

In count one of their complaint, the Robinsons allege that Liberty breached the terms of the Policy when it did not provide coverage for loss of the Robinsons' home due to the spider infestation. Under Alabama law, to state a claim for breach of contract, a plaintiff must allege: "(1) the existence of a valid contract binding the parties in the action, (2) his own performance under the contract, (3) the

6

defendant's nonperformance, and (4) damages." *City of Gadsden v. Harbin*, 148

So. 3d 690, 696 (Ala. 2013). Liberty contends that the Robinsons' breach of

contract claim fails because they have not alleged facts showing Liberty's

nonperformance. According to Liberty, no coverage exists under the Policy

because the loss occurred before the Policy period began and because the loss is

excluded under the Policy's insect/vermin exclusion. (Doc. 6 at 7-17). The court

does not consider Liberty's argument with respect to when the loss occurred

because, as explained below, the court finds that the loss is excluded under the

Policy's insect/vermin exclusion.

"General rules of contract law govern an insurance contract." *Safeway Ins.*

*Co. of Ala., Inc. v. Herrera*, 912 So. 2d 1140, 1143 (Ala. 2005). "The court must

enforce the insurance policy as written if the terms are unambiguous." *Id.*

"Whether a provision of an insurance policy is ambiguous is a question of law."

*Id.* "[T]he mere fact that a word or a phrase used in a provision in an insurance

policy is not defined in the policy does not mean that the word or phrase is

inherently ambiguous." *Id.* "A term is ambiguous only if, applying the ordinary

meaning, one would conclude that the provision containing the term is 'reasonably

susceptible to two or more constructions.'" *Herrera*, 912 So. 2d at 1144 (quoting

*State Farm Fire & Cas. Co. v. Slade*, 747 So. 2d 293, 309 (Ala. 1999)). To

determine the ordinary meaning of an undefined term, the court should not use

"technical, philosophical, or scientific meanings," but rather "the meaning which would be attached by an ordinary person of average understanding if purchasing insurance." *Liggans R.V. Center v. John Deere Ins. Co.*, 575 So. 2d 567, 571 (Ala. 1991) (citing Appleman, *Insurance Law and Practice*, Rev. Vol. 13, §§ 7383, 7384 (1976)).

The Robinsons claim that there home is a total loss due to a spider infestation. (Doc. 1 at ¶¶ 28-29, 56). The Policy excludes coverage for loss "[c]aused by . . . [b]irds, vermin, rodents, or insects." (Doc. 1-1 at 14). Thus, if spiders are "insects" or "vermin," then, as Liberty contends, the exclusion applies. If spiders are not "insects" or "vermin," then, as the Robinsons argue, the exclusion does not apply.[1] Because the Policy does not define "insects" or "vermin," the court turns to dictionary definitions of the terms to determine whether an ordinary person would have understood them to include spiders. *See Herrera*, 912 So. 2d at 1144 (using *Merriam-Webster's* dictionary as evidence of ordinary meaning); *Carpet Installation and Supplies of Glenco v. Alfa Mut. Ins.*

---

[1] The Robinsons suggest that because the complaint does not allege that Liberty denied the claim based on the vermin exclusion, this portion of the exclusion is inapposite to the court's analysis. (Doc. 16 at 6). The court disagrees. The letter that the Robinsons attached to their complaint in which Liberty denied the claim specifically refers to the "[b]ird, vermin, rodents, or insects" exclusion in its entirety and does not narrowly deny coverage based only on the insect exclusion. (Doc. 1-4 at 2). Therefore, the contents of the letter control. *See Hoefling*, 811 F.3d at 1277 ("A district court can generally consider exhibits attached to a complaint in ruling on a motion to dismiss, and if the allegations of the complaint about a particular exhibit conflict with the contents of the exhibit itself, the exhibit controls.").

*Co.*, 628 So. 2d 560, 562 (Ala. 1993) ("What is a dictionary definition if not an assertion of that very meaning that an ordinary person would give a particular word? It is exactly the result of an examination into the interpretation that ordinary people would give the word.").[2]

Merriam-Webster's defines "insect" as "any number of small invertebrate animals that are more or less obviously segmented and that include members of the class Insecta and others (as spiders, mites, ticks, centipedes, sowbugs) having superficial resemblance to members of Insecta – not used technically." *Merriam-Webster's Third New International Dictionary* at 1168 (1993 ed.). Dictionary.com defines "insect" as "any small arthropod, such as a spider, tick, or centipede, having a superficial, general similarity to the insects." https://www.dictionary.com/browse/insect. Thus, applying the ordinary meaning of the word, the term "insect" expressly includes spiders.

Citing five online dictionaries, the Robinsons contend that "[t]he overwhelming number of dictionaries describe insects as what they are – creatures

---

[2] As part of their response in opposition to Liberty's motion to dismiss, the Robinsons demand an evidentiary hearing pursuant to Rule 201(c)(2) of the Federal Rules of Evidence, "[t]o the extent the Motion to Dismiss invokes Fed. R. Evid. 201(c)(2)'s authority to ask the Court to take judicial notice of what is meant by 'insect' in the policy." (Doc. 16 at 2). Liberty has not asked the court to take judicial notice of what is mean by insect—or vermin—for that matter. Liberty argues that under the relevant rules of contract interpretation, the court should find that the ordinary meaning of "insect" and "vermin" includes spiders, and therefore, the plain language of the Policy excludes coverage for the Robinsons' loss. (*See* Doc. 6 at 14-17). Therefore, the court need not hold an evidentiary hearing pursuant to Rule 201(c)(2) of the Federal Rules of Evidence.

with six legs." (Doc. 16 at 16). However, of the five online dictionaries cited by Plaintiffs, three include spiders in their definition of "insect." https://en.oxforddictionaries.com/definition/insect (defining insect as, among other things, "[a]ny small invertebrate animal such as a spider or tick"); https://www.collinsdictionary.com/dictionary/english/insect (defining insect loosely as "any similar invertebrate, such as a spider, tick, or centipede"); https://www.yourdictionary.com/insect (defining insect "popularly" as "any small arthropod, usually wingless, including spiders, centipedes, pill bugs, and mites"). Thus, the majority of the authority cited by the Robinsons actually supports the court's conclusion that the term "insect," in its plain and ordinary sense, includes spiders.

The Robinsons maintain that, as a technical or scientific matter, spiders and insects are classified differently depending on body shape and number of legs, and therefore, the average person knows that spiders are arachnids, not insects. (Doc. 1 at ¶¶ 34-38; Doc. 16 at 7-8). But, this position asks the court to ignore controlling law governing contract interpretation. Here, that law demonstrates that when given its ordinary, and not its technical or scientific meaning, the term "insect" includes spiders. Therefore, the Robinsons' loss due to a spider infestation is not covered under the Policy's "insect" exclusion.

The Policy's "vermin" exclusion also applies under the circumstances of this case. Merriam-Webster's defines "vermin" as "animals obnoxious to man," including "small animals (as lice, bedbugs, mice) that tend to occur in great numbers, are difficult to control, and are offensive as well as injurious." *Merriam-Webster's Third New International Dictionary* at 2544 (1993 ed.). Dictionary.com defines "vermin" as "noxious, objectionable, or disgusting animals collectively, especially those of small size that appear commonly and are difficult to control, as flies, lice, bedbugs, cockroaches, mice, and rats." https://www.dictionary.com/browse/vermin. Although dictionary definitions of "vermin" do not expressly include spiders, the court finds that a person of ordinary intelligence would understand that spiders are small harmful, objectionable, noxious, or disgusting animals that sometimes occur in great numbers and can be difficult to control. Indeed, the Robinsons allege in their complaint that multiple efforts to eradicate the spider infestation have failed, and the spiders remain "so pervasive that a clear and present danger exists." (Doc. 1 at ¶ 21; see also Doc. 1 at ¶¶ 15-20).

At least one court tasked with interpreting similar policy language reached the same conclusion. *See Gregory v. Nationwide Mut. Ins. Co.*, 2012 WL 6651342 (E.D. Cal. Dec. 19, 2012). In *Gregory*, plaintiffs filed a homeowner's insurance claim with Nationwide for a mite infestation. *Id.* at *3. Nationwide denied the

claim because the policy excluded coverage for loss from "[n]esting or infestation, or discharge or release of waste products or secretions by birds, vermin, rodents, insects or domestic animals." *Id.* at *4. Relying on the Merriam-Webster's Dictionary definition of "vermin" and "an objectively reasonable reading of the policy," the court found that "vermin" included mites. *Id.* at *4-5. In reaching this conclusion, the court commented:

> Many other potential sources of loss, unlikely to be covered, were not listed. Creatures potentially described as vermin, including skunks, snakes, and spiders, were not named in the exclusions. Yet an objectively reasonable insured would understand the policy to exclude coverage for loss caused by these creatures because of the broad definition of vermin.

*Id.* at *5. Although not binding on this court, *Gregory's* rationale is particularly persuasive given the nearly identical policy exclusion in this case. Spiders are not named among the exclusions in the Policy, but based on the ordinary meaning of the term "vermin," an objectively reasonable insured would understand the Policy to exclude coverage for loss caused by spiders given the definition of the term, which includes small, objectionable animals that are difficult to control in great numbers.

In sum, applying the ordinary meaning of "insect" and "vermin," the court finds that these terms are not ambiguous, and that a person of ordinary intelligence would understand them to include spiders. Accordingly, the court **GRANTS** Liberty's motion to dismiss the Robinsons' breach of contract claim.

12

## 2.    *Bad Faith*

In count two of their complaint, the Robinsons allege that Liberty acted in bad faith when it refused to pay and investigate their claim.  Under Alabama law,

> the tort of bad-faith refusal to pay a claim has four elements—(a) a breach of insurance contract, (b) the refusal to pay claim, (c) the absence of arguable reason, (d) the insurer's knowledge of such absence—with a conditional fifth element: "(e) if the intentional failure to determine the existence of a lawful basis is relied upon, the plaintiff must prove the insurer's intentional failure to determine whether there is a legitimate or arguable reason to refuse to pay the claim."

*State Farm Fire and Cas. Co. v. Brechbill*, 144 So. 3d 248, 258 (Ala. 2013) (quoting *Nat. Sec. Fire & Cas. Co. v. Bowen*, 417 So. 2d 179, 183 (Ala. 1982)). As explained above, Plaintiffs have not alleged breach of the insurance contract. *See supra* pp. 6-12 .  Therefore, Plaintiffs' bad faith claim fails as a matter of law. *See Brechbill*, 144 So. 3d at 258; *Poonawala v. AIG Claim Sers., Inc.*, 2006 WL 8436586, at *2 (N.D. Ala. Nov. 20, 2006) ("Breach of contract is a prerequisite to bad faith.") (citing *State Farm Fire & Cas. Co. v. Slade*, 747 So. 2d 292, 304 (Ala. 1999)).  Accordingly, the court **GRANTS** Liberty's motion to dismiss the Robinsons' bad faith claim.

## III.   CONCLUSION

The court **GRANTS** Liberty's motion to dismiss Plaintiffs' complaint.  The court will enter a separate order consistent with this memorandum opinion dismissing Plaintiffs' claims with prejudice.

**DONE** and **ORDERED** this February 11, 2019.

_____

**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE